FILED
2026 Sep-10 PM 04:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT BRANDON FARMER,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **Case No. 5:25-cv-563-ACA** |
| | ] | |
| **SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,** | ] | |
| | ] | |
| **Defendant.** | ] | |

**MEMORANDUM OPINION**

Plaintiff Robert Brandon Farmer appeals the decision of the Commissioner of Social Security denying his claim for supplemental security income. Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

## I. PROCEDURAL HISTORY

On May 23, 2022, Mr. Farmer applied for supplemental security income benefits. (R. at 249–55).[1] He alleged that his disability began on May 1, 2007. (*Id.* at 249). The Commissioner denied his application, and Mr. Farmer requested review by an Administrative Law Judge ("ALJ"). (*Id.* at 140–49, 162–63). At that hearing, Mr. Farmer asserted that his disability began on April 27, 2022. (*Id.* at

[1] Mr. Farmer also initially applied for disability and disability insurance benefits (r. at 242–48), but these claims are not at issue here (*see* doc. 11 at 1–2; doc. 14 at 2–3 n.1).

44). The ALJ issued an unfavorable opinion on November 7, 2024 (r. at 16–31), which Mr. Farmer requested that the Appeals Council review (*id.* at 8–11). The Appeals Council denied his request for review. (*Id.* at 1–5). The Commissioner's decision is now final and ripe for judicial review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Where the ALJ denies benefits and the Appeals Council denies review, [this court] review[s] the ALJ's decision as the Commissioner's final decision." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks and alteration omitted).

"Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation marks omitted). The court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's

findings." *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted). But despite the deferential standard of review, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (quotation marks omitted).

## III. ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178. Under step four, the ALJ determines if a claimant's impairments "could reasonably be expected to produce" the alleged symptoms. *See* 20 C.F.R. § 416.929(b). Then, the ALJ examines the record and "evaluate[s] the intensity and persistence" of those symptoms to determine how they limit a

claimant's "capacity for work." *See id.* § 416.929(c)(1); *see, e.g.*, *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1273 (11th Cir. 2024).

Here, the ALJ determined that Mr. Farmer had not engaged in substantial gainful activity since his alleged disability onset date of April 27, 2022. (R. at 19). The ALJ found that Mr. Farmer's lumbar degenerative disc disease, osteoarthritis of the bilateral hips, diabetes mellitus, obesity, coronary artery disease, generalized anxiety disorder, and major depressive disorder were severe impairments, but that the gastroesophageal reflux disease, history of intracranial hemorrhage, headaches, hypertension, onychomycosis of toenails,[2] hyperlipidemia, and ventral hernia were not severe. (*Id.* at 19–20). The ALJ concluded that Mr. Farmer did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. (*Id.* at 19–23).

After considering the evidence, the ALJ determined that Mr. Farmer had

> the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except never work around hazards including unprotected moving mechanical parts and unprotected heights; tolerate occasional exposure to occupational atmospheric conditions (dust, fumes, odors, pulmonary irritants); and can only perform simple tasks and make simple decisions.

[2] "Onychomycosis" is defined as a "[v]ery common fungus infection of the nails, causing thickening, roughness, and splitting." *Onychomycosis*, Stedman's Medical Dictionary 1367 (28th ed. 2006).

(*Id.* at 23). The ALJ explained that Mr. Farmer's medically determinable impairments could reasonably be expected to cause his alleged symptoms. (R. at 24). But he concluded that Mr. Farmer's statements about the intensity, persistence, and limiting effects of those symptoms were not consistent with the medical evidence and other evidence in the record. (*Id.*). In doing so, the ALJ rejected an August 2023 clinical assessment of pain and physical capacities evaluation conducted by certified registered nurse practitioner ("CRNP") Haley Harding. (R. at 28–29). The ALJ found that Mr. Farmer had no past relevant work. (*Id.* at 30).

Relying on testimony from a vocational expert, the ALJ concluded that jobs existed in significant numbers in the national economy that Mr. Farmer could perform, including escort vehicle driver, ticket checker, or order clerk. (*Id.* at 30–31). Accordingly, the ALJ determined that Mr. Farmer had not been under a disability as defined in the Social Security Act from April 27, 2022 through the date of the decision on November 7, 2024. (*Id.* at 31).

## IV. DISCUSSION

Mr. Farmer argues only that substantial evidence does not support the ALJ's conclusion that CRNP Haley Harding's opinion is unpersuasive. (Doc. 11 at 12–21). The Commissioner argues that the ALJ's determination about CRNP Harding's opinion is supported by substantial evidence, but regardless, the ALJ's

determination that Mr. Farmer is not disabled is supported by substantial evidence. (Doc. 14 at 4–8).[3]

Under applicable regulations, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 416.920c(a). Instead, the ALJ considers the persuasiveness of a medical opinion using the following five factors: (1) supportability; (2) consistency; (3) the relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, and the purpose and extent of the treatment relationship; (4) specialization; and (5) other factors, including evidence showing the medical source has familiarity with other evidence or an understanding of the Social Security Administration's policies and evidentiary requirements. *Id.* § 416.920c(c). Supportability and consistency are the most important factors, and the ALJ must explain how he considered those factors. *Id.* § 416.920c(b)(2). The ALJ may, but is not required to, explain how he considered the other factors. *Id.* Remand is warranted only when an ALJ's error "creates fundamental unfairness or prejudice"—that is, when the argument would make a difference in a claimant's application for benefits. *Raper*, 89 F.4th at 1274 n.1; *see also Flowers v. Comm'r, Soc. Sec. Admin.*, 97 F.4th 1300, 1307 (11th Cir. 2024).

[3] Mr. Farmer does not argue that "the ALJ legally erred by failing to clearly articulate why he assigned no weight" to CRNP Harding's opinion—a legal question which would require *de novo* review. *Raper*, 89 F.4th at 1274–75. Instead, Mr. Farmer makes only factual arguments regarding whether the ALJ's conclusion is rational and supported by substantial evidence. (*See* doc. 11 at 19–21). Accordingly, the court reviews the ALJ's decision for substantial evidence.

At his hearing, Mr. Farmer testified to an inability to work due to heart issues, depression, and anxiety. (R. at 45–46). CRNP Harding conducted two assessments that the ALJ rejected as unpersuasive: a clinical assessment of pain conducted and a physical capacities evaluation. (*Id.* at 28–29; *see id.* at 1364–68). CRNP Harding's assessments relay the following:

- Mr. Farmer's pain level is "present to such an extent as to be distracting to adequate performance of daily activities or work," and activities such as walking, standing, or basic movements can "greatly increase[] pain to such a degree as to cause distraction from tasks or total abandonment of tasks";

- The side effects from Mr. Farmer's prescriptions can be expected to cause severe distraction and drowsiness;

- During one workday, Mr. Farmer could frequently lift five pounds and occasionally lift ten pounds; sit for six hours; stand or walk for one hour; and push and pull, climb stairs, bend or stoop, reach overhead, and operate a motor vehicle rarely (for less than five percent of each work day);

- Because of the "impairments of treatment," Mr. Farmer would likely be absent from work more than four days per month;

- Mr. Farmer would have a marked impairment in completing a normal workday or workweek without interruptions from psychologically based symptoms; performing daily activities within a schedule, including attending meetings, socializing, and working around the house; and responding to customary work pressures.

- Mr. Farmer would be moderately limited in his ability to understand, remember, or carry out complex instructions; to sustain a routine without special supervision; to identify normal hazards and take appropriate precautions; and to maintain attention and concentration for extended periods of time.

(*Id.* at 1364–68).

The ALJ determined that the "opinion of such debilitating pain and limitations are not persuasive or consistent with CRNP Harding's treatment notes." (R. at 29). First, the ALJ explained that the level of alleged pain "if taken literally, would render [Mr. Farmer] helpless and totally disabled," which was not supported by CRNP Harding's office notes from the day she completed the clinical assessment of pain and subsequent visits. (*Id.* at 28). The ALJ then detailed that CRNP Harding's notes indicate that Mr. Farmer presented for a regularly scheduled follow up visit, reported compliance with taking his medication and having no side effects, appeared generally oriented, and notes from later visits were "unchanged and negative." (*Id.* at 29). The ALJ noted that another providers' assessment that Mr. Farmer would miss work was "speculation and prophesy." (*Id.* at 28). Regarding Mr. Farmer's concentration and reaction to routine stressors, the ALJ determined that Mr. Farmer's impairments were overstated because he was not in therapy, did not take psychotropic medication, and did not have a history of psychiatric hospitalization. (R. at 29).

The ALJ nonetheless determined that Mr. Farmer's mental impairments limited him "to performing simple tasks consistent with unskilled work on a sustained and continuing basis" and his physical impairments limited him to "work at the sedentary exertional range." (*Id.* at 27). Under the regulations, sedentary work entails sitting and occasionally walking and standing, along with "lifting no

more than ten pounds at a time." 20 C.F.R. § 416.967(a). The regulations define unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." *Id.* § 416.968(a).

Even assuming that the ALJ's conclusions about the persuasiveness of CRNP Harding's opinions lack substantial evidentiary support, the court does not see–and Mr. Farmer does not explain–why failing to give CRNP Harding's opinions persuasive weight could have changed the outcome of his application. CRNP Harding opined that, even acknowledging Mr. Farmer's pain assessment, Mr. Farmer could lift between five and ten pounds, sit for six hours, stand or walk for one hour; and perform minimal amounts of other physical activity in one workday. (R. at 1365). This recommendation is consistent with the ALJ's conclusion that Mr. Farmer is restricted to sedentary work. (*Id.* at 27); *see* 20 C.F.R. § 416.967(a).

The same is true for CRNP Harding's opinions about Mr. Farmer's mental impairments. The ALJ considered the several medical opinions in the record and determined that Mr. Farmer can perform only simple tasks and make simple decisions, consistent with unskilled work. (R. at 23, 27); *see* 20 C.F.R. § 416.968(a). CRNP Harding's evaluation states that Mr. Farmer will have mild to no impairment interacting appropriately with the general public, requesting assistance or asking simple questions, remembering and carrying out simple

instructions or repetitive tasks, making simple work-related decisions, and responding appropriately to supervision and changes in a work setting. (*Id.* at 1366–67). Notably, a "mild" designation on the assessment form is defined as a "[s]uspected impairment of slight importance which does not affect ability to function." (*Id.* at 1366). This recommendation is consistent with the ALJ's ultimate determination.

The fact that CRNP Harding hypothesized that Mr. Farmer will likely miss four days of work per month "as a result of the impairments of treatment" also does not show that any error was harmful. The Eleventh Circuit has held absenteeism because of treatment is not an appropriate factor to consider in determining whether an individual is disabled. *Malak v. Comm'r of Soc. Sec.*, 131 F.4th 1280, 1286–87 (11th Cir. 2025). So the fact that the ALJ did not find CRNP Harding's opinions on Mr. Farmer's missed work persuasive is of no import.

Because the court concludes that any potential error in refusing to grant persuasive weight to CRNP Harding's opinion was harmless, the court **WILL AFFIRM** the Commissioner's opinion. *See Flowers*, 97 F.4th at 1307 (affirming the ALJ's decision when the ALJ's failure to consider a prior medical finding did not alter the finding that the claimant was not disabled).

## V. CONCLUSION

Because any potential error identified by Mr. Farmer is harmless, the court **WILL AFFIRM** the Commissioner's decision.

**DONE** and **ORDERED** this September 10, 2026.

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE